UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE D. TUCKER<br><br>    Petitioner,<br>v.<br><br>JEFFREY BEARD, Secretary<br><br>    Respondent. | Civil No. 14-CV-2462 WQH (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

Petitioner Maurice Tucker, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition). Tucker asserts three grounds for relief. He alleges insufficient evidence to support the verdict, erroneous jury instructions, and ineffective assistance of appellate counsel. Tucker raised two of the claims on direct appeal and one claim in a collateral challenge to the judgment. The California Supreme Court denied all three claims on the merits.

Respondent filed an answer to the Petition, arguing that the state court denials were reasonable and consistent with federal law. The traverse was due March 20, 2015. As of the date of this order, Petitioner has not filed a traverse. The court reviewed all filings and lodgments in this matter. For the following reasons, the court **RECOMMENDS** that the Petition be **DENIED**.

I.  **Relevant Background.**

   A.  **Procedural History.**

Tucker was initially tried for murder at a joint trial with co-defendant Charles Neal. Lodgment 9 at 1. At that first trial the jury convicted Neal of murder but could not reach a unanimous verdict as to Tucker. *Id.* At a second trial, the jury convicted Tucker of shooting at an inhabited dwelling and of killing a rival gang member, Stephen Cleveland. *Id.;* Lodgment 1 at 373-374. The jury also found true allegations that Tucker committed the offenses for the benefit or at the direction of, or in association with, a criminal street gang. *Id.* Tucker was connected to the shooting through circumstantial evidence, eyewitness testimony, and an admission of guilt. He was sentenced to 50 years to life in prison. Lodgment 1 at 533-536.

   B.  **Statement of Facts.**[1]

*Prosecution Evidence*

Tucker, known to others by the moniker Tuck, or Tuck–Bo, is a documented member of the O'Farrell Park Banksters criminal street gang (the O'Farrell gang), which is a rival of the Lincoln Park criminal street gang. June 9 is a main "gang holiday" for the O'Farrell gang and its associated gang, Skyline Piru.

On June 9, 2007, Stephen Cleveland, a person believed to be a member of the Lincoln Park gang who associated with known Lincoln Park gang members, was shot multiple times and killed near his house on 65th Street in San Diego after walking his girlfriend, Sharnay Robinson, to her car. That night, at about 7:30 or 8:00 o'clock, Robinson and Cleveland were at the driver's side door of her car parked across the street from his residence when a dark green SUV drove up and came to a sudden screeching

---

[1] This court quotes verbatim the factual background from the California Court of Appeals's opinion. Lodgment 5. *See* 28 U.S.C.§ 2254(e)(1) ("a determination of a factual issue made by a state court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-547 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001) (paraphrasing facts from the state court opinion). Petitioner may rebut the presumption only by clear and convincing evidence. 28 U.S.C.§ 2254(e)(1); *Slovik v. Yates*, 545 F.3d 1181, 1183 n.1 (9th Cir. 2008).

stop. The driver's window was partially rolled down, and the driver said to Cleveland, "Yo, what's up?" Cleveland, who seemed confused, responded by asking who the person was. The driver said, "You know who this be, it's Tookie." Robinson later testified the person could have said "Tuckie" or "2B." The passenger door of the SUV opened and Cleveland took off running. Robinson saw a person exit the vehicle and start running after and then shooting at Cleveland. She described the shooter as extremely tall, dark-skinned, and skinny. Tucker is 6 feet 3 inches tall, and around the time of his trial weighed 160 pounds.

Responding police recovered six expended nine-millimeter shell casings from the west side of the street across from the Cleveland residence, all fired from the same gun. A cell phone was also found at the scene, and later was determined to belong to Charles Neal, a member of the Skyline Piru criminal street gang, who also went by the monikers Choo–Choo, Little U.K. Banty, and 2 B Dat.

On the night of Cleveland's murder, Neal arrived in a dark SUV to a Travel Inn in Chula Vista where his then girlfriend Vanity August was staying, and told her he had not contacted her because he had lost his cell phone. August was watching the news, which had earlier reported on Cleveland's murder. Neal, who arrived with a man who was not Tucker, told August to turn the television on to the news and then tried to contact someone on the other man's phone. Both men were wearing dark clothes. After 20 or 30 minutes, Neal and the other man left in the SUV. Neal and August later dropped the SUV off in Spring Valley.

August testified at Tucker's trial that in or about May or June 2007, she, Neal, Tucker and Marquara Harvey purchased two prepaid phones in San Francisco, and at Neal's direction used a false name and address, as well as a Louisiana area code. Cell phone records for the pre-paid phone purchased for Tucker with a Louisiana area code showed that on June 9, 2007, ten calls were made from his phone between 9:12 p.m. and 10:00 p.m., and seven calls were made between 10:08 p.m. and 10:37 p.m. from the Chula Vista area around the Travel Inn. At 10:57 p.m. and 11:32 p.m., calls were placed

on Tucker's phone from a location closer to his house.

The prosecution put on testimony from Joseph Jamal Brown, a member of the O'Farrell gang, who was at the time serving a sentence for armed robbery. Before his testimony, he faced 22 years in prison, but as a result of his cooperation, he was facing between five and 15 years. Brown testified that Tucker, who he also knew as "Tuck–Bo" or "Tuck–6," was another member of the O'Farrell gang. He testified that he was with Tucker and Neal on June 9, 2007, after Brown and Tucker had been at a park to watch a show, when some Lincoln Park gang members appeared and interrupted the performance. That evening at Tucker's house, Neal and Tucker talked about going to "ride" on Lincoln, which meant they were going to do some sort of violence or a shooting. Neal and Tucker changed into black clothing and left in a green SUV dropped off by a friend of Brown's, Arrow Morris. Neal had arrived at Tucker's house in an Impala. A couple of days later, Tucker told Brown that he was driving the SUV on 65th Street with Neal when they saw Cleveland and backed up the SUV, after which Neal got out and confronted him and they exchanged words. Tucker told Brown that he (Tucker) got out of the SUV, chased Cleveland, and shot him in the neck.

According to Brown, weeks later, Brown visited Tucker at Tucker's house, and at that time Tucker told Brown that Neal had dropped his cell phone at the scene, and that police had it. Brown also testified that at some point before Cleveland's murder, Tucker told him that Tucker and Cleveland had exchanged words at a "Lil Wayne" music concert, and Tucker was "jumped" by a number of Lincoln Park gang members. Tucker was angry and upset about the incident.

Robinson testified at Tucker's trial that although she could not identify him in a photographic lineup after the incident, Neal was the person she saw in the SUV on the night of Cleveland's murder. She also testified that a few months after Cleveland's death, she saw Tucker at a party staring at her and felt a "negative vibe," but after she found him standing in front of her, she danced with him to make it seem as if she did not know him. She had heard the name Tuck–Bo but had never met Tucker. According to Robinson,

after dancing with Tucker, she got scared and left the party because she knew he was the man she saw shooting at Cleveland.

Cleveland's sister testified that in April 2007, she was at a "Lil Wayne" music concert and witnessed her brother engaged in a "big brawl" with 15 or 20 other African–American men.

On the night of June 9, 2007, Prudencio Flores was at his home when he heard a series of gunshots—two shots, and then a few seconds later, another three—outside his house. When he went outside, he heard people screaming and found Cleveland's body facedown inside his garage. At the time, Flores had a metal locker, as well as a mattress and bedframe, in front of his garage, and he moved them so that paramedics could work on Cleveland. About a week later, Flores found a bullet hole in the locker and a bullet in the mattress, which he was cutting up to place in the trash. He testified the locker was undamaged before the shooting, and he believed the bullet and damage were the result of the shooting. A forensic firearms specialist testified that the six casings found on the street were nine-millimeter luger caliber, and the bullet found in Flores's mattress was a nine-millimeter luger caliber missile, though the specialist could not identify it as coming from the same gun as the other casings because there were not enough markings on it.

*Defense Evidence*

A San Diego Police Department detective testified that on or about June 25, 2007, she received a photograph of Marcus Marshall, Tucker's brother, from Robinson's mother. The detective testified that Robinson had told her mother that Marshall was the driver of the SUV on the night of Cleveland's murder.

Danny Davis, who was incarcerated with Neal at the California Youth Authority, testified that Neal told him he was not with Tucker when he shot Cleveland.

### III.   LEGAL STANDARD

#### A.   AEDPA Governs this Petition.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). Under AEDPA, a federal

court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002). "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas petition must allege a deprivation of one or more federal rights; the federal court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### B. Decisions that Contradict or Unreasonably Apply Federal Law.

A federal habeas court may grant relief where the state court (1) decides a case "contrary to" federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue. *Id.* The state court decision must be more than incorrect or erroneous; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." *Andrade*, 538 U.S. at 75.

### C. Decisions Based on an Unreasonable Determination of Facts.

Section 2254(e)(1) provides: "[a] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

///

**D.     Review of State Court Decision.**

If a state supreme court silently denies a Petitioner's appeal with a summary dismissal, the reviewing federal habeas court must review the last reasoned state court opinion in making a decision. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

Here, Tucker raised all three claims to the California Supreme Court. Lodgments 6, 12. The court of appeal issued the last reasoned state court decisions that address the claims at issue in this Petition. The opinion on direct appeal addresses the insufficient evidence and jury instruction claims. Lodgment 5. The opinion on the habeas petition addresses the ineffective assistance of appellate counsel claim. Lodgment 11.

**IV.     PETITIONER'S CLAIMS**

**A.     Claim 1:  Insufficient Evidence.**

Tucker claims his due process rights were violated because there was insufficient evidence to convict him of shooting at an inhabited dwelling. Pet'n, p.6.[2] He first argues that because the sole theory of liability was as an uncharged co-conspirator in a murder, and there was no allegation that the shooting was a natural and probable consequence of murder, there is no legal predicate for his conviction. Second, Tucker argues that there was no evidence to support a finding that any of the shots fired at Cleveland actually hit any house. Pet'n, pp.35-36.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When evaluating a sufficiency of evidence claim and whether due process rights have been violated, the court must determine whether *any* rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Habeas courts must respect the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming the

---

[2] All page citations for the Petition refer to the page number assigned in CM/ECF.

trier of fact resolved all conflicts in a manner that supports the verdict. *Id.* at 319.  Once a state court fact finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most favorable to the prosecution." *Id*.

Under AEDPA, federal habeas courts review "*Jackson* claims" with two layers of deference. *Coleman v. Johnson*, __ U.S. __, 132 S. Ct. 2060, 2062 (2012); *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).  First, this court cannot re-weigh the evidence and draw different inferences on habeas review from what the jury reasonably found at trial. *Coleman*, 132 S. Ct. at 2060; *see Bruce v. Terhune*, 376 F.3d 950, 957-958 (9th Cir. 2004).  Second, the federal court cannot "overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court[;]" it can only do so if the decision is "objectively unreasonable." *Coleman*, 132 S. Ct. at 2060; *Juan H.*, 408 F.3d at 1275.  This court can only ensure that the state court took "more than a perfunctory look at the relationship between the evidence presented and the verdict." *Mitchell v. Prunty*, 107 F.3d 1337, 1340 n.3 (9th Cir. 1997).

Here, the court of appeal rejected Petitioner's argument that insufficient evidence supported the convictions.  It first laid out the standard for how to review a claim of insufficient evidence, noting the conviction must stand unless there is insufficient evidence to support it under any hypothesis. Lodgment 5 at 16.  This follows the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Next, the appellate court explained the crime of "maliciously and willfully discharg[ing] a firearm at an inhabited dwelling house." Lodgment 5 at 17; Cal. Penal Code § 246. It specified:

> [Section 246] proscribes shooting either directly at or in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it. [Quotations and citations omitted.]  The statute does not require that the house actually be hit by gunshot. [Citation omitted.][FN9]

> FN9. Thus, in *People v. Chavira* (1970) 3 Cal.App.3d 988, the defendant and his associates fired several shots at persons "congregated in front of, and on the driveway leading to" an inhabited dwelling. (*Id.* at p. 993.) The defendant argued that the evidence was insufficient to support his section 246 conviction because he did not fire directly at the dwelling, but only at the persons gathered outside of it. (*Chavira*, 3 Cal.App.3d at p. 992.) The court held that when the shooters fired a "fusillade of shots directed primarily at persons standing close to a dwelling," the jury was "entitled to conclude that [the defendants] were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result," and thus they had an intent sufficient to satisfy section 246. (*Chavira*, at p. 993.)

The court then recounted the eyewitness testimony of Sharnay Robinson and the testimony of Prudencio Flores, who heard the shooting outside his house, and who found a bullet in front of his garage, where Cleveland collapsed. Lodgment 5 at 18. It rejected Tucker's "uncharged conspiracy" claim because of the "long and firmly established" case law and "well settled general rule" that an uncharged conspiracy can be used to prove criminal liability for a co-conspirator. Lodgment 5 at 18-19. The court then reasoned that the evidence was sufficient to show Tucker's guilt:

> Here, the evidence amply supports Tucker's conviction. Robinson ultimately identified Tucker as the shooter, which was consistent with Brown's account. Brown testified to Neal and Tucker's planning and preparation for retaliation against Lincoln Park, including dressing in dark clothing and arranging for the vehicle, and described Tucker's admission to Cleveland's shooting. Despite the forensic examiner's inability to pinpoint the bullet found in Flores's mattress to the same gun, that bullet nevertheless was of the same caliber, and that evidence plus Flores's testimony permitted the jury to rationally infer that the bullet was from Cleveland's shooting. The mattress and damaged locker were in front of Flores's garage. Under the circumstances, the jury was entitled to conclude that a reasonable person in Tucker's position, who planned to commit a murder with a firearm, would know or should know that shooting at another person running in a residential neighborhood could result in shots fired at or in close proximity to houses, and thus was a reasonably foreseeable consequence of the conspiracy to murder Cleveland. In other words, the evidence showed Tucker was shooting either directly at Flores's house or in such close proximity to it that he exhibited a conscious disregard for the probability that a bullet would strike the house and its inhabitants.

Lodgment 5 at 19-20.

This court finds that any rational trier of fact could have relied on the evidence to support Petitioner's conviction for shooting at an inhabited dwelling. The court of appeal took "more than a perfunctory look at the relationship between the evidence presented and the verdict." It properly relied upon physical evidence, such as the caliber of the bullet, and witness testimony that addressed motive, eyewitness identification and proximity of gunshots to an inhabited dwelling, to conclude that Petitioner's convictions were well-supported by substantial evidence. *See Mitchell*, 107 F.3d at 1340 n.3. Such reliance was not "objectively unreasonable" or speculative because these facts, taken in the light most favorable to the prosecution, support the conviction for shooting at an inhabited dwelling. Contrary to Tucker's claims, the court of appeal properly determined that the murder conspiracy manifested the requisite criminal intent for shooting at an inhabited dwelling, and it did not matter that none of the shots actually hit a house.

Applying the standards of *Jackson* and *Winship*, even if finders of fact could reasonably disagree as to the weight of and inferences drawn from the evidence, disagreement with a state court decision cannot be a basis to grant habeas relief. In sum, the state court decision on this claim did not contradict or unreasonably apply "clearly established federal law" as determined by the U.S. Supreme Court, and did not rely on an unreasonable determination of the facts.

This court **RECOMMENDS** that Tucker's claim for a due process violation based on insufficiency of evidence be **DENIED**.

### B.    Claim 2: Erroneous Jury Instruction.

Tucker claims his due process rights were violated when the jury was instructed with CALJIC No. 315, because that instruction erroneously suggests that the confidence expressed by a witness in the accuracy of his own trial identification is a reliable barometer of its accuracy. Pet'n, p.7. The contested part of the instruction reads, "how certain was the witness when he or she made an identification[?]." Lodgment 5 at 12, n.6.

Tucker argues that it has been established scientifically that when an eyewitness claims at trial to be certain of his identification of a suspect, the likelihood that the

identification is accurate is no greater than if the witness is equivocal or admits uncertainty. He further argues that using CALCRIM No. 315 to instruct the jury on the testimony of Sharnay Robinson–the sole eyewitness of the crime–unfairly encouraged the jury to accept her testimony. Tucker says that the "certainty factor" should only apply (if at all) to the initial, out-of-court identification procedure and here, Robinson did not identify Tucker as the shooter until a few months after the shooting. Lodgment 2 at 148-151; 167-171.

Federal habeas relief is not available for errors involving purely the application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). An instructional error can provide habeas relief only where "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'[citation omitted]." *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). Moreover, the allegedly erroneous jury instruction cannot be judged in isolation. *Estelle*, 502 U.S. at 72. It must be considered in the context of the entire trial record and the instructions as a whole. *Id.*

In examining this claim, the court of appeal detailed how California courts repeatedly reject the "certainty factor" challenge to CALCRIM No. 315, and its predecessor, CALJIC No. 2.92. Lodgment 5 at 12-13. It then reasoned that even if including the "certainty factor" in the instruction was erroneous, any error was harmless:

> The factor is phrased in a neutral manner (citation omitted), and it applies not only when a witness is certain of his or her identification, but also when he or she is not certain. As the People point out, the factor is one of many nonexclusive factors that the jury was told it could consider in determining eyewitness reliability; the jurors were not obligated to base their verdict on that or any other particular factor or give Robinson's identification any particular weight. Importantly, Brown's testimony, and other evidence corroborating his story, provides an independent basis for the jury's verdicts. Further, Tucker's counsel thoroughly cross-examined Robinson regarding the poor lighting conditions at the scene, her varying statements to police, her inconsistent identification of others in three different photographic lineups, and her erroneous belief that Marshall was the driver of the SUV on the night of Cleveland's murder. In closing argument, defense counsel extensively argued the weaknesses and unreliability in Robinson's eyewitness accounts and pretrial identifications. We cannot say under either

> prejudice standard a result more favorable to Tucker would have resulted had the certainty factor been omitted from CALCRIM No. 315.

Lodgment 5 at 15.

Reviewing the reasoning of the state court, the instruction was phrased neutrally (i.e."how certain was the witness...") and was only one of several factors listed. Lodgment 5 at 12, n.6. Defense counsel cross-examined Robinson on all her inconsistencies and argued the weaknesses of her testimony in closing argument. There was also independent evidence–the testimony of Brown and corroborating evidence–to support the verdict. Considering this one factor in this one instruction within the entire trial record, this court cannot say there was a due process violation that "so infected the entire trial that the resulting conviction violates due process." *See Palmer v. Davey*, 2014 WL 7461355 at *20 (C.D. Cal. Dec. 30, 2014) (relying on Supreme Court precedent to find no error with the "certainty term" in CALJIC No. 2.92 to entitle petitioner to habeas relief because the instruction was phrased neutrally and was only one of many factors to consider); *see also Earl v. Macomber*, 2014 WL 6694022 at *7 (C.D. Cal. Nov. 24, 2014) (noting difficulty in challenging state jury instructions and that eyewitness instruction was unlikely to be harmful).

Because the state court's decision on this claim did not contradict or unreasonably apply "clearly established federal law" and did not rely on an unreasonable determination of the facts, this court **RECOMMENDS** that Tucker's claim for a due process violation based on an erroneous jury instruction be **DENIED**.

### C. Claim 3: Ineffective Assistance of Appellate Counsel.

Tucker claims his due process rights and right to effective assistance of counsel were violated because appellate counsel failed to raise valid claims on direct appeal. Pet'n, p.8. He cites to "Exhibit B" as stating the supporting facts. *Id.* In Exhibit B Tucker argues that the performance of his appellate attorney fell below the objective standard because he failed to investigate and introduce into evidence information that either demonstrated his client's factual innocence or raised sufficient doubt to undermine

confidence in the verdict. *Id.* at 67. Tucker then refers to the arguments presented to the California Supreme Court "(via) writ of habeas corpus on, (4) grounds, #D066374." *Id.*[3] The ineffective assistance of appellate counsel claims raised in case no. D066374 include counsel's failure to raise (1) a *Brady* violation due to failure to disclose an exculpatory witness statement before the first trial; (2) failure to retry Tucker and Neal together, when the exculpatory information was available; (3) insufficient evidence to convict for murder and shooting at an inhabited dwelling; and (4) prosecutor misconduct in not disclosing exculpatory information. *See* Lodgments 10, 12.

"The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). To establish prejudice in the context of ineffective assistance of appellate counsel, Petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694). As with ineffective assistance of trial counsel claims: "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.*, n. 14 (quoting *Strickland*, 466 U.S. at 697).

Grounds 1, 2 and 4 all involve the alleged *Brady* violation where the prosecutor failed to disclose an exculpatory witness before the first trial. The witness was Danny Davis, an acquaintance of Neal. Lodgment 2 at 894-904. He first gave law enforcement the exculpatory information in 2008, before the first trial. Lodgment 1 at 223-224, 231, 249. It was not disclosed to Tucker's counsel, though, until 2011, when the trial court ordered that informant information be disclosed before the second trial. Lodgment 2 at

---

[3] Respondent argues that Tucker raises only one of the four grounds he presented to the state courts for his claim of ineffective assistance of appellate counsel because Tucker only refers to insufficient evidence under "Grnd. #3 on state writ." Pet'n, p.67. While Tucker's argument in Exhibit B of his Petition focuses on the insufficient evidence claim regarding the sole eyewitness, in an abundance of caution, the court also addresses the other three bases for ineffective assistance of appellate counsel that Tucker raised to the state courts.

28. After it was disclosed, defense counsel moved twice to dismiss the case against Tucker. Lodgment 1 at 223, 375. In the second trial, Davis testified that both he and Neal were incarcerated at the California Youth Authority in 2007. Lodgment 2 at 894. Davis said that while there together, Neal told him that he had shot Cleveland. Lodgment 2 at 896. He also said that Neal said he was accompanied by two other people, and neither one of them was Tucker. Lodgment 2 at 896. In closing argument, defense counsel argued that Davis was a believable witness regarding Neal's admission that he was the shooter and that Tucker was not there. Lodgment 2 at 1092-1094.

The court of appeal found that Tucker did not show that appellate counsel's performance was deficient or that he suffered prejudice due to appellate counsel's failure to raise these three *Brady*-related issues on appeal:

> The remedy for a *Brady* violation is to set aside the judgment of conviction and order a new trial at which the defendant has the *Brady* material available, not to order dismissal of the charges against the defendant. [Citations omitted.] Tucker admits the exculpatory witness statement was disclosed prior to the second trial, and the witness actually testified for the defense at that trial. Thus, since Tucker in effect was given the appropriate remedy for the *Brady* violation when he was retried after disclosure of the exculpatory material, counsel was not ineffective for not pursuing the *Brady* issue on appeal, and Tucker suffered no prejudice.

Lodgment 11 at 2.

Where a state appellate court finds that an issue lacks merit, a petitioner cannot show that the appellate result would have been different had counsel done more on appeal. *Smith v. Robbins* (2000) 528 U.S. 259, 285-286. As the court of appeal explains, the three alleged *Brady* violations lack merit and in any event, any alleged violation was remedied by the disclosure and testimony of Davis at Tucker's second trial. Appellate counsel was not deficient for failing to raise these meritless claims. *See Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (finding that to be effective under *Strickland* "counsel need not appeal every possible question of law"(internal quotation omitted)). Further, Tucker suffered no prejudice because Davis testified at the second trial, and in closing argument, defense counsel argued why the jury should believe Davis's testimony.

This court, therefore, finds no ineffective assistance of appellate counsel claim based on the alleged *Brady* violations.

Tucker also argues appellate counsel was ineffective for failing to raise a sufficiency of evidence claim based on the testimony of the sole eyewitness, Sharnay Robinson. Pet'n, p.68-71. This court has already detailed how, considering Robinson's testimony, there was no due process violation as to the sufficiency of evidence to support the conviction of shooting at an inhabited dwelling. In doing so it found that besides the eyewitness account, there was sufficient evidence to support the conviction, including physical evidence–such as the caliber of the bullet–and witness testimony that addressed motive and proximity of gunshots to an inhabited dwelling.

In addressing this claim, the court of appeal concluded:

> Tucker's remaining claim is that appellate counsel provided constitutionally ineffective assistance by not challenging the sufficiency of the evidence to support the convictions. Tucker points to weaknesses and inconsistencies in the testimony of the eyewitness [Robinson] who identified him as the shooter. This claim was asserted and rejected on direct appeal. Claims rejected on appeal may not be reasserted in a petition for writ of habeas corpus. [Citation omitted.] Moreover, the sufficiency of the evidence supporting a conviction is not a proper issue for consideration on a petition for habeas corpus.

Lodgment 11 at 2.

As for sufficient evidence to support the murder charge, there was evidence other than Robinson's eyewitness account to support the verdict. For example, Jamal Brown–a fellow gang member–testified that Tucker told him about his initial altercation with Cleveland, that Tucker was attacked by members of Cleveland's gang, and that Brown was present when Neal and Tucker agreed on a plan to "ride on" Cleveland's gang, and that Tucker admitted to Brown that he shot Cleveland. Lodgment 2 at 466-468. Defense counsel cross examined Brown and Robinson. Lodgment 2 at 477-526; 221-236, 261-266. Further, Tucker used the exculpatory testimony of Davis. In closing argument, defense counsel argued that Brown was not a credible witness (Lodgment 2 at 1055-1078, 1082-1083), Sharnay Robinson was not believable (Lodgment 2 at 1083-1092),

and Danny Davis was believable (Lodgment 2 at 1092-1094).

In light of the evidence independent of Robinson's eyewitness account–such as the testimony of Brown and the physical evidence–and the inclusion of the defense's evidence, this court cannot say that appellate counsel was deficient for failing to raise a sufficiency of evidence claim as to the murder.  Also, in light of Tucker using Davis as a defense witness in the second trial and having the opportunity to cross-examine Robinson and Brown and argue his case in closing argument, Tucker did not appear to suffer any prejudice in failing to raise this claim on appeal.

In sum, the state court decision regarding ineffective assistance of appellate counsel did not contradict or unreasonably apply "clearly established federal law" under *Strickland*, and did not rely on an unreasonable determination of the facts.  This court therefore **RECOMMENDS** that Tucker's claim for ineffective assistance of appellate counsel be **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, this court **RECOMMENDS** that the district court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying the Petition.

**IT IS ORDERED:**

(1)  No later than **May 27, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

    (2) Any reply to the objections shall be filed with the Court and served on all parties no later than **June 5, 2015**. The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: April 29, 2015

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
U.S. Magistrate Judge